**Bernice MORRIS, Respondent,**

**v.**

**Richard MORRIS, Appellant.**

**No. WD 53495.**

Missouri Court of Appeals,
Western District.

Sept. 23, 1997.

Regina Keelan Bass, Kansas City, for Respondent.

Robert C. Paden, Independence, for Appellant.

Before HOWARD, P.J., and BRECKENRIDGE and HANNA, JJ.

HOWARD, Presiding Judge.

This is an appeal from a marriage dissolution. Richard raises two points on appeal. First, he contends the trial court erred in awarding a higher percentage of the marital estate to Bernice, as opposed to dividing the estate substantially equally, because there was no substantial evidence to credit Richard with a $75,000 asset he did not own, and it was a misapplication of the law not to follow the dictates of § 452.330, RSMo. Second, Richard contends the trial court erred in ordering him to pay $400 per month for child support because it was a misapplication of law to deviate from the presumed child support amount calculated pursuant to Form 14 when there was no substantial evidence that Richard was capable of earning more than $1,000 per month and able to pay $400 per month for child support.

## Facts

Richard and Bernice Morris were married on September 11, 1971. The couple has two children. Gretchen (now emancipated) was born in 1975. Aneka was born in 1977. Aneka currently attends Longview Community College.

During the first five years of the marriage, Richard, who has a B.A. in biology, worked as a chemist for Lake City Ammunition

Plant, earning between $500 and $700 per week. In 1975, Richard left Lake City Ammunition Plant and went to work as a chemist for Marion Merrill Dow (now Hoechst Marion Roussel). The parties separated in June 1993. In the fall of 1993, Richard's job at Marion Merrill Dow was eliminated due to downsizing. Richard received $101,627 in severance pay. After his job was eliminated, Richard began to look for work, but was unable to gain employment as a chemist.

Shortly after Richard received his severance pay, Richard's brother bought a duplex. Bernice claimed that Richard used a portion of his severance pay to purchase the duplex through his brother. Richard claimed that he gave the $75,000 to his brother as repayment of a loan.

On April 15, 1994, Bernice filed a petition for dissolution. During the period of separation, Bernice worked, and continues to work, as a receptionist for Mid–America Wholesale, earning approximately $1,386 per month. Bernice has 32–34 college credit hours. During the last 18 years of the marriage, Bernice was a homemaker, although in 1979 she obtained her real estate license and worked as a realtor for six months.

In May 1994, Richard and his brothers, Jewel Mitchem and Spain Mitchem, started Greenback Delivery, Inc., a transport company, delivering goods to area businesses. Richard is the secretary of Greenback Delivery and owns a one-third interest in the company. To date, Richard has not obtained employment in his field. Richard has undergone hip replacement surgery. He claims he is unable to seek employment in the field of manual labor. He also claims he has arthritis and is in constant pain.

On September 23, 1996, the trial court entered a decree of dissolution of marriage. The trial court granted the parties joint legal custody of Aneka, with primary residential custody to Bernice, and ordered Richard to pay child support in the amount of $400 per month. In dividing the property, the court awarded $582,539.74 (56 percent) of the net assets to Bernice. The court awarded $453,216.26 (44 percent) of the net assets to Richard. No award of maintenance was made.

Each party was ordered to pay his own attorney's fees.

**Standard of Review**

We will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

**Point I**

Appellant's first point on appeal is that the trial court erred in 1) awarding a higher percentage of the marital estate to Bernice, as opposed to dividing the estate substantially equally; 2) crediting Richard with a $75,000 duplex that he did not own; 3) not following the dictates of § 452.330.

■ Appellant's first claim is that the trial court should have divided the estate substantially equally, rather than awarding a higher percentage of the estate to Bernice. The trial court has considerable discretion in dividing marital property. *Hutcherson v. Hutcherson*, 909 S.W.2d 403, 406 (Mo.App. W.D.1995). The court will interfere only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Id.*

■ Under § 452.330 RSMo 1994, the trial court is required to divide the marital property in a just manner, but a just division is not necessarily an equal one. *Woolsey v. Woolsey*, 904 S.W.2d 95, 100 (Mo.App. E.D. 1995). The fact that one party is awarded a higher percentage of marital assets is not a per se abuse of discretion. *Lenger v. Lenger*, 939 S.W.2d 11, 14 (Mo.App. W.D.1997). Disproportionate divisions of marital property are routinely affirmed. *In re Marriage of Smith*, 892 S.W.2d 767, 769 (Mo.App. S.D. 1995). In this case, we find that in light of the fact that Bernice has primary physical custody of the couple's minor child, the property division by the trial court was not so disproportionate as to amount to an abuse of discretion.

■ Appellant's second claim is that there was no substantial evidence to credit him with a $75,000 duplex he did not own. The

trial court found that Richard was unable to adequately explain where he had expended the $101,627 in severance pay he had received from Marion Merrill Dow. The court further found that Richard paid $75,000 to his brother and immediately thereafter his brother purchased the duplex. Richard claimed that the payment to his brother was repayment of previous undocumented loans. The court found that Richard should be credited with having received $75,000 in marital assets, *either in the form of the duplex or the monies paid to his brother.* Richard admits that he paid the money to his brother. Therefore, there was substantial evidence to support the trial court's decision that Richard should be credited with having received $75,000 in marital assets, regardless of whether Richard actually owned or had an interest in the duplex.

Appellant's third claim is that the trial court misapplied the law by not following the dictates of § 452.330. Section 452.330 provides that the court "shall divide the marital property in such proportions as the court deems just," considering all relevant factors, including 1) each spouse's economic circumstances; 2) each spouse's contribution to the acquisition of the marital property, including the contribution of a spouse as homemaker; 3) the value of each spouse's nonmarital property; 4) the conduct of the parties during the marriage; and 5) custodial arrangements for minor children.

There is no evidence that the trial court failed to consider the factors enumerated in § 452.330. The property division was not an abuse of discretion.

Point I is denied.

## Point II

Richard's second point on appeal is that the trial court erred in ordering him to pay $400 per month for child support because it was a misapplication of law to deviate from the presumed child support amount calculated pursuant to Form 14 when there was no substantial evidence that Richard was capable of earning more than $1,000 per month and able to pay $400 per month for child support.

An award of child support is within the sound discretion of the trial court, and the trial court's award will not be disturbed unless the evidence is insufficient to support it. *Kiem v. Kiem,* 945 S.W.2d 603, 604 (Mo. App. E.D.1997). Where, as in this case, there was no request for findings of fact and conclusions of law on the matters in issue, and the trial court made none, all facts are presumed found in accord with the judgment, and the judgment will be upheld under any reasonable theory presented and supported by the evidence. *Walker v. Walker,* 936 S.W.2d 244, 249 (Mo.App. S.D.1996). We defer to the trial court's superior ability to view the witnesses and determine credibility; it is free to believe or disbelieve the testimony given by the witnesses. *Price v. Price,* 921 S.W.2d 668, 671 (Mo.App. W.D.1996).

In this case, the trial court imputed income of $2,000 per month to Richard. We first consider whether the trial court properly imputed the income to Richard. The instructions for completing Form 14 provide that gross income includes "income from any source." The directions also provide that if a parent is "unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court . . . may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, [and] prevailing job opportunities in the community. . . ." A court may consider the parent's past and present earnings and his anticipated future earning capacity. *State ex rel. Atkinson v. Anthony,* 947 S.W.2d 832, 834 (Mo.App. W.D. 1997). However, if income is imputed to a parent based on his past earnings, the award must be supported by evidence of the parent's ability to pay. *Id.* at 835.

Richard claims he was not capable of earning more than $1,000 per month. However, the court found that Richard's earning potential was $2,000 per month, based on any income he may earn from Greenback Delivery, his rental income, and his investment income. The trial court's award was apparently based on Richard's actual income and his earning capacity.

While Richard claims he has applied for between 20 to 70 jobs in his field, he also testified at trial that he had plans to move to Arkansas soon to take care of his mother and "live off the fat of the land." The trial court could have reasonably found that this testimony contradicted Richard's testimony that he was still looking for work, and it could have led the trial court to reasonably believe that he was not making a good faith effort to obtain new employment in his field.

In addition, Richard's own testimony indicated his willingness, and apparent ability, to continue paying child support in the amount he had been paying. The court noted that Richard testified he had been paying Aneka $100 per week and that he would continue to do so. Richard also testified that he sometimes gave Aneka more than $400 per month. At trial, when Richard was asked whether he believed it was important to continue to provide for Aneka's college education, Richard said, "Not only I believe it's important, I will do it regardless of what anybody says."

Furthermore, Richard was making between $50,000 and $60,000 as a chemist for Dow when he lost that job. We find that the trial court did not err in imputing income of less than half that amount to Richard for the purpose of determining child support.

We next consider whether the trial court properly departed from the child support amount calculated pursuant to Form 14. Rule 88.01(e) creates a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the amount to be awarded, but provides that the presumption may be rebutted if the court enters a finding that the amount is unjust or inappropriate and the evidence supports such a finding. *Farr v. Cloninger,* 937 S.W.2d 760, 765 (Mo.App. S.D.1997). When supported by the evidence, the court can make an allowance of child support for post-secondary educational needs, in addition to the presumed amount under Form 14. *DeCapo v. DeCapo,* 915 S.W.2d 343, 346 (Mo.App. W.D.1996).

According to Rule 88.01, the presumed child support amount for an income level of $2,000 per month is $301 per month. However, the court found that the presumed amount was unjust and inappropriate in this case because of Aneka's extraordinary college expenses. This finding was supported by the evidence produced at trial, including Richard's own testimony about Aneka's expenses. In addition, as previously discussed, Richard expressed a willingness and apparent ability to pay child support in the amount awarded by the trial court.

Point II is denied.

The judgment of the trial court is affirmed.

All concur.