**Mark W. FOESTE, Respondent,**

v.

**Charlene J. FOESTE, Appellant.**

**No. ED 82354.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 9, 2003.

Mary Eftink Boner, Buerkle, Beeson, et al., Jackson, MO, for Appellant.

Richard G. Steele, Bradshaw, Steele, Cochrane & Berens, L.C., Cape Girardeau, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Charlene J. Foeste (Mother) appeals from the trial court's judgment and decree of dissolution of her marriage to Mark W. Foeste (Father). On appeal, Mother challenges the child custody provisions of the decree where the trial court awarded Father primary physical custody of the parties' son. Because the trial court failed to make the appropriate findings, we reverse and remand.

Mother and Father were married on November 13, 1999. The parties separated on August 15, 2001. A male child was born of the marriage on October 17, 2001. Thereafter, Father filed a petition for dissolution of marriage. At the dissolution trial, Mother presented evidence of Father's abusive behavior and background. Father presented evidence of Mother's use of illegal drugs and association with known drug users. Father presented a proposed parenting plan wherein he would have sole legal and physical custody of the minor child. Mother also submitted a proposed parenting plan wherein she would have sole legal and physical custody of the minor child.

Prior to the dissolution trial, Mother specifically requested the trial court to enter findings of fact and conclusions of law. The trial court entered its judgment dissolving Mother's and Father's marriage and dividing marital property and debts. The trial court rejected both proposed parenting plans and awarded the parties joint legal custody with primary physical custody of the minor child to Father and visitation to Mother pursuant to the court's parenting plan. Mother now appeals the trial court's child custody award. Additional facts necessary to the disposition of the case are included below in addressing the issues on appeal.

We will affirm the trial court's custody determination unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Besancenez v. Rogers*, 100 S.W.3d 118, 122 (Mo.App. E.D. 2003). The trial court possesses broad discretion in child custody matters, and its decision will only be reversed if we are firmly convinced the welfare and best interests of the child require otherwise. *Id.*

In her first point, Mother contends the trial court erred in awarding custody of the minor child to Father because in doing so, the trial court failed to make any findings of fact and conclusions of law regarding the best interest of the child and domestic violence. Mother argues the statutes mandate that the trial court make the appropriate specific findings of fact and conclusions of law under the circumstances. We agree.

First, Mother relies upon Section 452.375.6, RSMo 2000,[1] to support her contention that the trial court erred in failing to make the requisite findings of fact and conclusions of law regarding the best in-

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

terest of the minor child. Section 452.375.6 provides:

> If the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement.

In its judgment, the trial court's only findings relating to the custody arrangement state "[t]he parties should be granted joint legal custody with [Father] having primary physical custody of [the minor child]," subject to "[Mother's] right to visitation as set forth in the attached Parenting Plan." There is no specific written finding as to the best interest of the child.

In the present case, both parties submitted separate parenting plans. Mother's plan provided for sole legal and physical custody of the minor child to her. Father's plan provided for sole legal and physical custody of the minor child to him. The trial court awarded the parties joint legal custody, with primary physical custody to Father. The trial court did not make any written findings as to the best interest of the child and why it was rejecting both proposed parenting plans. Under the circumstances of this case, the trial court was required to make a written finding detailing the specific relevant factors that made its custody arrangement in the best interest of the child.[2] *See Brandow v. Brandow,* 18 S.W.3d 584, 588 (Mo.App. W.D.2000). The trial court was also required to make a written finding detailing the specific relevant factors resulting in the rejection of the parties' proposed custody arrangements. *See Id.* Because the trial court made neither of these findings, its judgment is not in compliance with Section 452.375.6.

Father argues the trial court made findings on two relevant factors, Section 452.375.2(3) and (6) as required by Section

---

**2.** The relevant factors for determining the best interests of the child are set forth in Section 452.375.2, which provides:

  (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

  (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

  (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

  (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

  (5) The child's adjustment to the child's home, school, and community;

  (6) The mental and physical health of all individuals involved. If the court finds that a pattern of domestic violence has occurred, and if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

  (7) The intention of either parent to relocate the principal residence of the child; and

  (8) The wishes of a child as to the child's custodian.

452.375.6. Father points to the "Restrictions" section in the Parenting Plan of the trial court. That paragraph provides:

> In no event and under no circumstances whatsoever shall Respondent allow, encourage, promote or acquiesce to [the minor child] being in the presence, locale, structure, motor vehicle, or any other site where **ROBERT "BOBBY" H. JAMES** shall be located. The Court further recognizes the danger posed to the well being of [the minor child] by any contact with the minor child and **ROBERT "BOBBY" H. JAMES**, it also prohibits any and all communication by any medium between **ROBERT "BOBBY" H. JAMES** and [the minor child].

(Emphasis in the original.) [3]

We do not believe this paragraph sufficiently complies with the statutory requirements. This paragraph merely prohibits contact between the minor child and Robert "Bobby" H. James and states that any such contact would pose a danger to the child's well being. The trial court did not explain or present a factual basis for the restriction. We do not find this to be a sufficient finding under Section 452.375.2(3) and (6).

Father cites to *Davidson v. Fisher*, 96 S.W.3d 160 (Mo.App. W.D.2003) to support his contention that the trial court made the requisite findings under Section 452.375.6. In *Davidson*, the trial court made findings of fact as to two of the eight factors contained in Section 452.375.2. *Id.* at 163–64. The *Davidson* court made specific findings that the father would be the parent most likely to afford meaningful visitation and that Mother had been in an abusive relationship and that permitting visitation in the abuser's presence "would endanger [the child's] physical health or impair her

emotional development." *Id.* at 163. The trial court further made a specific finding that it would be in the child's best interest to be in the father's primary custody. *Id.* at 164.

The *Davidson* case is distinguishable from the present case. Here, the trial court did not explain its reason for its restriction of contact between the child and Robert "Bobby" H. James. There is no factual basis for the restriction contained in the judgment as there was in *Davidson*. Furthermore, the trial court here did not include a specific finding as to the best interest of the minor child as the trial court did in *Davidson*.

■ While the trial court does not have to do a complete "laundry list" of the statutory factors, the trial court must address any of the relevant factors it considered in determining the custody arrangement in order to comply with Section 452.375.6. The trial court here failed to make specific findings as to the relevant factors it considered in awarding custody to Father. Therefore, we must remand the cause for the trial court to make specific findings as to the best interest of the child and its reason for rejecting both proposed parenting plans.

■ Furthermore, Mother contends the trial court erred in failing to make written findings concerning domestic violence citing Sections 452.375.13, 452.400.1, and 452.375.2(6). Section 452.375.13 provides:

> If the court finds that domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or

**3.** Robert "Bobby" H. James, with whom Mother had a relationship, is a convicted methamphetamine dealer and is currently serving time in prison.

other family or household member who is the victim of domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, from any further harm. Section 452.375.2(6) requires the trial court to enter written findings if the court finds that a pattern of domestic violence has occurred and the court finds awarding custody to the abusive parent is in the best interest of the child.

Unlike Section 452.375.2(6), Section 452.375.13 mandates a finding if any domestic violence occurred, whether or not it is a pattern of conduct, and regardless which parent is awarded custody. *Dickerson v. Dickerson,* 55 S.W.3d 867, 872 (Mo. App. W.D.2001). Compliance with the requirements of Sections 452.375.2(6) and 452.375.13 is mandatory. *Id.* If the record reflects evidence of domestic violence, the trial court must make written findings consistent with these statutory provisions. *Id.* The non-discretionary nature of these provisions reflects the legislature's concern with the problem of domestic violence, and its resolve that the trial court should consider the existence and history of such violence in making its determination of child custody and visitation. *Gant v. Gant,* 892 S.W.2d 342, 345–46 (Mo.App. W.D.1995)(interpreting predecessor statutes).

Mother also relies on Section 452.400.1 to support her argument that the trial court was required to make written findings as to domestic violence. Section 452.400.1 provides, in pertinent part:

In determining the granting of visitation rights, the court shall consider evidence of domestic violence. If the court finds that domestic violence has occurred, the court may find that granting visitation to the abusive parent is in the best interest of the child. . . . The court shall consider the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on other persons and shall grant visitation in a manner that best protects the child and the parent or other family member who is the victim of domestic violence from any further harm. The court, if requested by a party, shall make specific findings of fact to show that visitation arrangements made by the court best protect the child or parent or other family or household member who is the victim of domestic violence from any further harm.

Here, the trial court failed to enter written findings regarding domestic violence in its award of custody and visitation and therefore, did not comply with Sections 452.375.13 and 452.400.1. Initially, we recognize that Mother filed a motion requesting specific written findings of fact and conclusions of law. Furthermore, the record in this case indicates substantial evidence of domestic violence was presented at trial. While living together, Mother testified that Father pushed Mother down the stairs and the neighbors called the sheriff. Mother did not press charges at that time. Mother also testified Father gave her a black eye in March of 2000, shortly after they were married. Mother further testified that Father pulled her out of bed by her hair and when she tried crawling away, he kicked her in the rear causing her to hit her chest on the footboard of the bed. As a result, Mother was bruised in the chest area and sought treatment from a doctor. Additionally, Father threw a glass at Mother shattering glass all over her. In November of 2000, after Mother miscarried the parties' first pregnancy, Father was arrested and charged with felony domestic assault of Mother for choking her. Mother testified she was attempting to leave in a vehicle. Father chased her so she ran down the driveway. Mother testified Father dragged her up the driveway and tried to strangle her

after tackling her leaving scratches on her legs, pulling out some hair, and ripping her shirt. Mother testified she had red marks on her neck from Father's assault and the police officer noted red marks on Mothers neck and torn clothing. Father pleaded guilty to an amended misdemeanor domestic assault charge and was sentenced to thirty days in the county jail, the execution of which was suspended and Father placed on probation for two years. Mother also presented evidence from Father's first wife, who testified Father had abused her during their marriage, and evidence of other episodes of Father's violence.

Father admitted Mother had a black eye in the past, but stated that it occurred in self-defense as he was trying to protect himself from Mother. Father denied that he tried to strangle Mother or tore any part of her clothing in the November 2000 incident. Father testified he tripped over Mother after she had fallen down. Father testified that Mother was the aggressor and stated that if the police had been called each time he and Mother had a fight, there would be a whole stack of assault convictions. Father testified that Mother would slap, hit, and kick him during fights. Mother admitted that she scratched Father's face and ripped his clothes.

■ It is clear from the record that sufficient evidence of domestic violence was presented to trigger the requirement in Section 452.375.13 that the trial court make specific findings regarding domestic violence. *Dickerson,* 55 S.W.3d at 873–74. We are aware, as Father asserts, that if a trial court does not make explicit findings, we are to presume that the trial court made implicit findings with the result reached. *Mund v. Mund,* 7 S.W.3d 401, 403 (Mo. banc 1999). On the basis of this record, however, it is not possible to presume the trial court made an implicit finding in accordance with the result reached.

A finding of no domestic violence would be against the weight of the evidence where both parties admitted to violence. *See Id.* at 403–04. Thus, the trial court on remand should enter findings of fact regarding whether domestic violence occurred pursuant to Sections 452.375.13 and 452.400.1. Upon finding that any domestic violence occurred, the trial court must make the required further findings as specified in those sections. In addition, if the trial court finds that a pattern of domestic violence occurred and that awarding custody to an abusive parent is in the best interest of the child, then the trial court must enter written findings of fact and conclusions of law pursuant to Section 452.375.2(6).

In her second point, Mother contends the trial court erred in awarding primary custody to Father because the award of custody was against the weight of the evidence and an abuse of discretion. Because this case must be reversed and remanded so that the trial court can enter findings pursuant to Sections 452.375.13 and 452.400.1 and, if necessary, findings and conclusions pursuant to Section 452.375.2(6), disposition of Mother's second point in this appeal would be premature.

■ In her final point, Mother argues the trial court erred in allowing two witnesses to testify at trial that had not been disclosed in discovery. Mother asserts the trial court abused its discretion in allowing the witnesses to testify, which resulted in prejudice to Mother. We disagree.

A trial court has broad discretion to permit or deny examination of a witness whose name has not been disclosed in response to appropriate discovery. *In Interest of A.M.W.,* 64 S.W.3d 899, 906 (Mo. App. S.D.2002). Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the

sense of justice and indicate a lack of careful consideration. *Id.*

Under the circumstances of this case, we cannot say the trial court abused its discretion. The name of one witness, Corporal Brenda Cone, was discovered a few days before trial and disclosed to Mother at that time. Wife did not request a continuance at that time, nor did she seek to depose Corporal Brenda Cone. The name of the other witness, Bryan Eric Young, was discovered on the first day of trial through cross-examination of Husband.

Corporal Brenda Cone of the SEMO Drug Task Force and Missouri Highway Patrol testified Mother, pregnant at the time, was present in Robert "Bobby" H. James's garage when he was arrested for manufacturing methamphetamine. This testimony concerning the drug raid at Robert "Bobby" H. James's shop was duplicative of Mother's deposition testimony concerning the same. Bryan Eric Young, who admitted to being a drug user and being convicted of a felony for writing bad checks, testified he saw Mother use methamphetamine. Bryan Eric Young was called as a rebuttal witness to Mother's allegation that she had never used methamphetamine and his testimony was used solely to impeach Mother's credibility and the trial court stated it was not certain how believable a witness Bryan Eric Young would be. Mother failed to show how either witness's testimony prejudiced her. We find no abuse of discretion.

The judgment of the trial court is reversed and the cause is remanded for redetermination of custody and entry of findings and conclusions consistent therewith.

GEORGE W. DRAPER III, P.J. and MARY K. HOFF, J., concur.